Case number 25-5405, Tony Mitchell et al. v. Steve Conrad et al. Ms. Walker, you may proceed for the appellant. Good morning. May it please the court, I'm Christy Walker from the Jefferson County Attorney's Office and I represent appellant Brian Arnold. Brian Arnold, a Louisville Metro Police helicopter pilot at the end of his 25-year career, was forced to make a split-second decision amid a rapidly unfolding environment. On May 15, 2019, Arnold answered the call of fellow officers to assist with an armed robbery suspect who was driving erratically and evading police. Arnold, standing with his gun drawn at the hood of the vehicle, gives the suspect commands. Put the car in park. Put your hands up. The suspect ignores the commands. He's not compliant. He looks into Arnold's eyes and turns away. Instead of raising his hands, putting the vehicle in park, or turning off the vehicle, the armed robbery suspect defies the officers. Arnold watches as the suspect drops his shoulder, reaches down into the seat, watches as his leg, his thigh, raises up and engages the gas. How can he see his leg from there? He doesn't say he sees his leg, your honor. He says he sees him shift from the upper portion of his body. So he sees his body shift. He engages the gas. He hears the engine rev and then he feels the pressure of the vehicle against him, against his leg, which causes bruising on his thigh. If he doesn't act, he will be crushed between the vehicles. If he doesn't act, the J-Town officer he sent running back to her cruiser will get run over. It's his job to watch the suspect. It's his job to protect the officers. He makes the decision. He shoots. He eliminates the threat. He's entitled to qualified immunity under Kentucky law. Now, after six years of litigation and dismissal of the federal court claims, the district court erred in two fundamental ways. No, your honor. I believe the opinion states that the parties agree that the O'Neill claim was satisfied with the federal dismissal. So there's no federal claim remaining in this case? There's no federal claims remaining in the case. It's only state court claims. We're here because, well, originally this case... Did that resolution of the O'Neill claim happen after the appeal? No. The parties agreed... Is it Judge Hale? Have I got this right? Yes, it's Judge Hale. Did Judge Hale have the opportunity to say, with no federal claims anymore, I'm going to exercise my discretion to send the state law claim back to state court? He could have exercised that discretion, your honor. He did not. What he did was he decided to rule in the state law claims and deny immunity erroneously, and so the appellant had the opportunity to appeal. The plaintiffs did not say send the state court claims back. They did not say to do that. We are asking this court, because the record is clear, discovery has been completed to review these state law claims. This court has the authority under Browning, under Livermore, the cases cited in our brief. The reason why it's important... All those cases, that's where pending state jurisdiction, right? Pending jurisdiction over the state claims because they were pending federal claims? When can you appeal a state-only claim when there are no pending federal claims? I believe in Hale v. Sandard, and I also believe in Browning. The federal court claims had been dismissed, and the state court claims were remaining, and the court said you can appeal those state court claims under interlocutory appeal if the state law says that you can. Here, Kentucky is very clear under Brethe v. Prater that you can. Why it's important... I don't know that you're making the interlocutory point, are you? That's not the point you're making. I guess I hadn't thought through this myself. I guess I've seen enough of these cases where it suggests we still do have jurisdiction because usually the way you see it is the district court judge dismisses the federal claims and then decides not to exercise his discretion to review the state claim. This is the opposite. He exercises his discretion to see the state claim. He could have done that, Your Honor. I believe it's 28 U.S.C. 1367. He could have said I'm not going to discuss the state court claims. It happens quite often. I'll send those back to state court. You said the plaintiff never asked to have it sent to state court, but was this something where both sides engaged with Judge Hale as to whether he ought to proceed to resolve the state claim? No, Your Honor. It was originally briefed with the federal law and the state law because the state law claims were included on supplemental jurisdiction, and then the court ruled stating the federal claims were to be dismissed, finding that there was no clearly established constitutional right violated, and then ruled on the state court claims and decided to keep those and rule on them. He could have sent those back. While it's important to Brian Arnold that you review these now, under Kentucky state law, immunity is supposed to be reviewed in the first right. We've now been in over six years of litigation, and he has still not been able to have his qualified immunity reviewed by any court. So we're asking this court to please apply Kentucky law so that he can have that reviewed. It is this court's discretion. You can certify it to the Supreme Court of Kentucky if you would like, but we believe that the court has all of the tools, all of the law. Kentucky law is very clear on these points, so we would ask you to rule on these issues. So the good faith component of this, how do we think about that? Why can't you make the argument there's a fact question there? Well, under Kentucky law, it's very clear that all factual issues, even if there are factual issues, are to be resolved in qualified immunity. The Kentucky Supreme Court in Meinhart and Shahee, and the Kentucky Appellate Court in Dickerson all tell you explicitly to do that. The Kentucky Supreme Court in Meinhart and Shahee say the good faith element of qualified immunity is not a jury question. It's manifestly one for the trial courts. Trial courts must make certain factual findings when deciding on a party's entitlement to a qualified immunity. Isn't that a state procedural? Doesn't that look like a state procedural rule? We don't apply state procedural rules, right? Well, that goes back to, I believe, my quote in Browning and Livermore. This federal court has the right to look at the interlocutory appeal, and when they do that, they look to Kentucky state law. They look to the state law, and the state law says when you look at interlocutory appeals... But we're talking about who's the fact finder on this issue. The trial court or the appellate court. The trial court or the appellate court is a fact finder. How do we know that? Because state law tells you... But doesn't Rule 56 tell us who the fact finder is? Rule 56 is for summary judgment. This isn't a case where you're trying to determine whether or not plaintiff gets to go to a trial. This is a case to determine whether or not Brian Arnold is entitled to qualified immunity under Kentucky state law. And Kentucky state law requires... Who the fact finder is a substantive state law? Yes, Your Honor. But is it substantive? Yes, Your Honor. It is. You look to and the federal courts look to the state law. And I'll back up a second and maybe make it a little bit more simple. Because in this case, you don't have to...  I'm sorry? My suspicion is what you mean by this is that if the actions were objectively reasonable, you always have good faith. And that really isn't a fact question. Thank you, Your Honor. Yes. And I was going to step back for just a second and go to that point. In this case, we would submit there are no facts to figure out. We have a video of the entire event. There's all of the uncontroverted facts show that Arnold was reasonable and had a good faith belief that his life and the life of his officer... Help me out with this. Is there a Kentucky case that says something along these lines? That if the actions of the officer were objectively reasonable, it just matters not that this officer had some bad faith in his or her head. Is there a case that says that? Shahi. Shahi is a Kentucky Supreme Court case. And what that case does is it analyzes the good faith, bad faith component. And in that case, they actually found the officer acted in bad faith. So what they did was the officer said, I saw this felony occur and that's why I pursued him and I was within my policy to do that. There was a video of the event. The court watched the video and the court said, no, that wasn't reasonable objective basis as what happened on the scene. So for that reason, you did not meet the good faith component. So you're correct, Your Honor, in saying there is this objective analysis of what occurs on the scene determined. Kentucky law says the officer always wins if someone can say it was objectively reasonable. Is that a fair description of Kentucky law? No. That's the case I just explained to you, Shahi. The officer did not win because it was not objectively reasonable based on the facts of the scene. I think we're in agreement, maybe violently so.  Just listen to what I'm saying. If it's established by a trial court or court of appeals that what the officer did was objectively reasonable, that means the officer always wins no matter what evidence of bad faith there is. Yes, sir. I'm sorry. I thought you said subjective and not objective. I did not hear that. Okay. All right. We're on the same page. Yes. Thank you. In this case, the district court not only erred because it failed to review the good faith standard, which, as I stated, we don't believe requires any fact finding. But if there were to be any fact finding, then the trial court is the one to do it under Kentucky law that we just discussed. Secondly, the district court... I'm pushing back on it a little bit. You're saying this is a summary judgment case, right? There's a video. We can look at it. If it went to trial, you're saying there wouldn't be a jury because under Kentucky law, there's no jury in these kinds of cases. No, Your Honor. We're talking about qualified immunity. So to determine qualified immunity, whether or not the officer is entitled to that, that's a court question. There's a video. Federal court looks to videos when there's controverted facts that don't apply. So that would be determined. The case would go to trial if it were determined that the officer were not entitled to qualified immunity. But we're saying... What about just the point, the objective reasonableness? Why can't you say it's a close call? Why can't you just look at that film and say, you know, the car jumps forward, you know, after he's shot. And it happens so fast. Because if it's a close call, Your Honor, then Brian Arnold's entitled to immunity. And the reason for that is because his perception is that he was in fear of danger for himself and another officer. He was faced with an armed robbery suspect, one that was evading police, one that was not compliant, ignoring commands, dropping his shoulder, reaching down with a gun. Not known for driving over people. Well, if you look at Boyd v. Bepler or Settler v. Collier, which are cited in our briefs, the officer does not have to wait until the threat materializes. A vehicle can be a deadly weapon before it moves in Settler v. Collier. That's an 11th Circuit case. Or it can be before the person shows himself to be dangerous. He was in threat of his life when he had a noncompliant armed robbery suspect in a vehicle who was revving the engine. But if you look at the video, and here's where we have an issue, too, the district court looked at the real-time video and said it's too close to call. If it's too close to call, how can it be bad faith for Arnold to have perceived that vehicle was moving? Arnold testified it was moving. Just so you understand the argument, the too close to call could be about that point. You can't just always say it's a close call, officer always wins. The close call might be whether it's a close call. Do you understand the point? I believe it's a framing of the issue, Your Honor, that we're having a difference with. I don't believe the issue is whether or not the vehicle moved. I believe that he had ample reason to be in fear of his life and that of Officer King's whether or not the vehicle moved. But if this court and the other court is stuck on the vehicle moving, then we have a slowed-down version of a video that we do not believe the district court reviewed that shows frame by frame. And you will see if that frame by frame is what we're asking you to review, you will see the rims of the tire moving, you will see the car press into Arnold, then you will see him shoot and you will see the gun recoil. And you can tell that the vehicle does in fact move before Arnold shoots. And we believe that we are entitled to have a court review that video and to make a determination if the court is stuck on the issue that it has to move before he can be in fear of his life. Ms. Walker, under Kentucky law, is there a presumption of good faith in the qualified immunity context? Yes, Your Honor. There is a presumption of good faith. And actually it's the plaintiffs who have to prove by substantial evidence that there's bad faith. And they have to prove that there's a malicious intent or corrupt motive. So if it's a close call, the presumption that is not rebutted should prevail, should it not? Correct, correct. And you have stated that much more eloquently than I was trying to earlier. Thank you for pointing that out. Yes, if it's a close call, it should defer to the officer because they have not proven bad faith just by the essence of it being a close call. And here we have no factors at the scene. The only thing that a plaintiff has put forward as evidence of bad faith are things that happened years before this incident. No court in Kentucky, no federal court has ever looked at that. There's nothing at the scene to say Officer Arnold operated in bad faith and perceiving the threat. Well, that's other evidence that he may have racial animus against African Americans. Is that even admissible evidence or is that other act evidence that is inadmissible? No, Your Honor, that's not admissible evidence. There's Kentucky Supreme Court law that says you cannot enter general character evidence to show propensity of violence or to show that somebody committed some type of act. Is that what they were using this for? Is this character evidence as opposed to evidence that's relevant to the actions here? Yes, they were looking to these affidavits from years prior to disgruntled family members to show that he acted a certain way at the scene years later and that's not permissible. That goes to propensity, does it not? Yes. And that's what's excluded. Correct, correct. Under our federal rules, we would apply the federal rule of evidence here, would we not? Yes, and under either it would be precluded, Your Honor. Is the Kentucky rule and other act evidence comparable to the federal rule? Yes, Your Honor. So it would be precluded under both. In the two cases I would point out stated by Plaintiff Price and the other one is Brown, both of those when there was racial animus it happened at the scene. So like I said, you're correct, this is general character evidence that would never be admitted into trial, never be admitted in this case, that they're using to say we should be looking at his subjective intent. All right, thank you. Thank you, Your Honors. All right, we'll go from the other side. Thank you. Good morning, Your Honors. Good morning. May it please the Court, my name is Hal Freedman. I am honored to stand up here today for Duwantes Mitchell and his family. I took a bunch of notes. I'm going to stick to my script, but I will be happy to answer any question, of course, you ask. At the outset, is it true that the federal claims were all out of the picture before the appeal? Yes. And Judge Hale had an opportunity to decide whether to, and I guess you urged him to decide the case? Well, in actuality, the way that went down was it wasn't really something that either side urged in the briefing. Judge Hale simply didn't address the issue, and I believe that the primary case that you're referring to is Gamal v. City of Cincinnati, which generally establishes the idea that we look at various factors to determine if the district court should remand the case back to the state court, dismissed without prejudice. But Gamal adds one more thing, and that is a presumption that if there is no federal jurisdiction, if there are no federal claims, the presumption is it goes back to the state court. So I was prepared to talk about that, but I will address your question first. But just, I'm embarrassed that I can't remember this. We do have a jurisdiction. In other words, if the district court exercised its discretion to resolve the state law claim and the federal claims all go out of the case, just help me out. I'm just not remembering the rule. We still have jurisdiction, even though the federal claims are gone. Because at the time of the decision, there was penitent jurisdiction over the state law claims. At the time of the decision, there was jurisdiction over the state law claims. The federal claims were dismissed on the basis that the court said, Judge Hale said, you can't identify a specific case that would have put a reasonable officer on notice that his conduct was flagrantly unconstitutional. I'm making a jurisdictional point. Yes. I'm just trying to make sure. You're quite confident we have jurisdiction. No, I'm not. I'm confident that under your analysis, the district court has the discretion, potentially, not to dismiss the state law claims. What I would argue, respectfully, is that this court does not have jurisdiction for the reasons articulated in our brief. And the primary reason for that is based on Johnson v. Jones. A totally different set of arguments. Let's not do that right now. Didn't you try to appeal the grant of immunity and we dismissed that appeal? I did, Your Honor. And what I determined after filing that cross-appeal was that we did not have the right to request that appeal. And so we voluntarily dismissed it. All right. Mr. Friedman, can you tell me where the district court dismissed the Monell claim? Yes. Where that occurred? Yes. What happened was, procedurally, Your Honor, before we got to the motion for summary judgment, Mr. Arnold, or Officer Arnold, the defense had filed a motion to dismiss the Monell claim. We had a status conference with the district court, and we all kind of agreed, you know, if Officer Arnold's off the hook, then there's no Monell claim. So let's reverse it. And so the idea was, let's see what the court does with Officer Arnold. If the court dismisses all claims against Officer Arnold, the Monell claim would fall apart. So are you saying you stipulated to dismissing the Monell claim? Essentially correct, yes, Your Honor. Essentially. Is it in the record? It is. Is there a judgment? I don't think there's a judgment as to the Monell claim. Also, I think you're wrong, that I think the claim against Arnold was dismissed because it wasn't clearly established. It wasn't dismissed because it wasn't a constitutional violation, and therefore you could still have a Monell claim because you technically could have a constitutional violation, although it would not be clearly established. But you're saying, I guess, you conceded you didn't have a Monell claim? But I just don't see a judgment to that effect in the file. There is no judgment. You are absolutely correct. And what I said earlier was, I thought, consistent with what you just said, which was that the district court found it could not find a case that would have put an officer on clear notice that what he did was constitutional. That's a separate issue of whether there's a constitutional violation. I've had cases that the Monell claim has proceeded, even though the officer was dismissed because it wasn't clearly established. But if there is a constitutional violation, and there's liability as to the municipality, it can so hope, that's all. Well, there has been found by the district court, Judge Hale, that there was no 1983 or constitutional violation. So what we're focused on here is merely the remaining state law claims. Just one thing I want to make sure I've got straight. You want the federal courts to resolve this, whether it's us or Judge Hale. You're not asking to get to state court. That's the thing I want to make sure I understand. Your Honor, in our briefing, we did suggest that the proper remedy would be to either affirm this decision by Judge Hale. Which would be a federal court decision. That would be. That would be. Or alternatively, make the decision as a matter of jurisdiction, because all federal courts must determine their own jurisdiction. Right, right. But the Johnson v. Jones argument would just put it back in front of Judge Hale. That's still a federal court resolving your state law claim, right? If the court were to say we have no jurisdiction to hear this appeal. Yes. Without remanding it, without telling the judge to go ahead and use Gamel to remand it, you are correct. And so just yes or no answer. At the end of the day, you want Judge Hale to resolve your state law claim. To be honest with you at this point, at the end of the day, since there are no federal issues, we would probably prefer that the matter be remanded or dismissed without prejudice and remanded to the state court. But that's the decision for this court. Am I right that that's just now, the last 30 seconds, is the first time you've made that request? No, Your Honor. It's in the brief. Did you ask Judge Hale to send it to state court? No, we never did. Okay, that's what I'm getting at. Okay. I think I've got that. Let's get to the good faith argument. Okay. We've all seen the movie. So why don't you just talk through why, boy, you know, it all happens pretty quickly. I mean, we've seen what you've seen. It does. It does happen quickly. Let me do exactly what you've asked me to do to the extent that I can within the time I have. What we're really dealing with in this appeal is not an immunity issue. What we're really dealing with in this appeal is a disputed issue of material fact case.  We got that? Yeah. And so the district court, as you know, you've read the opinion, found numerous issues of disputed material fact. And I could articulate all of them. Well, let me fast forward and you tell me if I've got this wrong. Under Kentucky law, if the court decides that the actions were objectively reasonable. Yes. Isn't that the end of the case? In other words, doesn't that show that by definition. No, Your Honor. Go ahead. Learned counsel for the appellant was wrong in what she told you. Federal law applies an objectively reasonable standard. That has to do with the same issues that the judge, the district court. Kentucky looks at objective and subjective? Kentucky looks at two things for purposes of looking at qualified immunity. Number one, was a ministerial rule violated? Or number two, was the officer acting in a discretionary capacity in bad faith? That is the test in Kentucky under Yanira v. Davis. So it is not the same test. Okay, so just help me with this. This is not hypothetical? This is not making any concessions about what happened? Yes. But just my hypothetical situation is you have an officer encountering a suspect. The suspect raises his gun. The suspect shoots at the officer. After that first shot, the officer fires back, kills the suspect. That we would all agree is subjectively reasonable. But this officer has lots of subjectively bad motivations. Whether they're racial animus, gender animus, God only knows. But they're horrible. Doesn't the officer win that case? Not necessarily under state law. I see. So in that case, even though you've been shot at and missed and fire back, if a jury could find you had bad faith and other animus for what you did, that would still go to a jury trial and the decedent could still win. You are asking a hypothetical question, as you suggested.  And so in my hypothetical response, I can imagine scenarios. You don't get that. No, no. What I'm trying to say is I can imagine scenarios where perhaps the officer prior to the encounter created a situation in bad faith to create. Not that hypothetical. But under your scenario, yes. Under your scenario, that officer had the right to fire. He still could be a jury verdict against the officer. Yes, but in that hypothetical which you've provided, there is no evidence of the type of bad faith we're dealing with here. I'm making it just like this, but worse. I understand. I understand your hypothetical. I think we also have to look, though, in this case, to the facts that are in dispute. The district court found numerous facts in dispute. The facts in dispute run the gambit from whether the vehicle moved before the first shot, to whether anyone was in danger, and to whether the officer, in fact, did act in good faith. Now, there is a slew of additional facts. I just tried to put those into the biggest possible categories. What are the facts that the officer did not act in good faith? The facts are a number of facts. First, the officer has testified inconsistently on numerous occasions regarding his motivation for the shooting. Ms. Walker mentioned a gun. There was no gun. There was no weapon. The officer testified he thought he was going to be killed by the gun that Mr. Mitchell had. Mr. Mitchell had no gun. He never saw a gun. Officer Arnold testified to the Public Integrity Unit that he made the decision to shoot Mr. Mitchell in part because of the way Mr. Mitchell looked at him. That's all in the brief. Officer Arnold told us if he fired that gun before the car moved, he acted with excessive force. Officer Arnold then told us that he had made the decision to fire his weapon before the car moved. I don't really even need the racial component to establish the bad faith here, in my judgment. However, the racial component is very important because the question becomes, what racial animus did Officer Arnold bring with him on that fateful day on May 19th, the day that he shot Mr. Mitchell? We have a slew of evidence from the people that know Officer Arnold the very best, his family, that this man fears black people. Let me say that again. That's important because in the deposition testimony and in the PIU investigation, Officer Arnold says many times, I was in fear. I was in fear. What was he in fear from? You can watch the video. I know you did. The video shows a man who slows down behind a stop sign, not being chased. He is blocked in. Four officers appear with guns pointing at him. Why doesn't he comply with their commands? That's an excellent question, and I would argue, or no, I won't argue it. I'll say what I believe the facts show. What I believe the facts show on that are, as you suggested earlier, this happened in seconds. Number two, as we've articulated extensively in the brief. Was there an argument that he couldn't hear them? There is an argument. In fact, he had ear pods on when he was pulled over. Why don't you stay behind the podium? I'm used to trials. I can tell. He had ear pods on. It's a question of whether the windows were up or not. There's some conflicting testimony about that. And on top of that, Judge, all the officers were yelling conflicting commands. Let me give you an example. Put your hands up. Put the car in park. Get out of the car. Now this all happens in seconds. Officer Arnold testified at no point in time was that car in park. So if Mr. Mitchell had attempted to put the car in park and moved his foot from the brake and shifted the car, common sense, which we all bring with us to the courtroom, tells us that alone could have caused the car to move a tiny bit. But that's, I'm getting a little off point, but I am trying to answer your question. Mr. Friedman, you talk about the officer Arnold had really no basis to fear Mr. Mitchell, but wasn't Mr. Mitchell suspected of committing a string of armed robberies? We addressed that extensively in our brief, Your Honor. There were five or six robberies that the appellant attempted to pepper throughout this case in their original briefing and in their appellate brief. However, if you look at the robbery reports and you look at the summaries which were provided, Mr. Mitchell was only a person of interest, not even a suspect. There was no warrant issued for him. Are you saying that Arnold did not suspect Mitchell of having committed a string of armed robberies? I'll tell you the absolute truth as I remember it from the record. What I remember from the record, and again I believe we briefed this, Arnold knew nothing about Mitchell. He knew nothing about him. All he knew is he was driving a white Kia. That's it. You're saying on this record the officer didn't have any suspicions that he'd committed some crimes? Absolutely. I'm sure during the original interaction that Officer Arnold had with his other patrolmen. That's pretty relevant. Certainly. And we believe that it was communicated to Officer Arnold that he was a criminal suspect in a burglary. Well, armed robberies are different. Armed robberies involve a gun. You say, well, he had no reason to suspect that he might have a gun in the car. Well, if he's committed armed robberies, I assume he does have a gun in the car. Well, Your Honor, respectfully, there was no gun. There was no gun seen. There was no gun found after the death. I know that. We're looking at the objective viewpoint of the officer at the scene. Yes. And what he knows. And what he knew was that Mr. Mitchell was a suspect, sorry, a person of interest. Armed robberies, right? What I believe Officer Arnold knew from the briefing and from the evidence is limited to the following facts. He knew or believed that Mr. Mitchell was a person of interest in an armed robbery. That is what I believe he knew. I think that's where we all started the case. Okay, and nothing more. But the point kind of is, though, when we talk about all these strings of robberies, Arnold knew nothing about that. That wasn't something that was in his calculus. And Mr. Mitchell, again, was nothing more than a person of interest. No warrant, nothing. I'm not sure how much time I have, so let me try to quickly address. You're over your time. I'm over my time? Yeah. Oh, then in that case. Well, I mean, if you had one key point you wanted to leave us with, with not too much. Well, I did. I did. I wanted to just briefly address the self-defense statutes. Those were never raised in the answer, and they also require a subjective analysis.  And I also wanted to raise one more thing about the video, if I might. The judge who evaluated this case, Judge Hale, said the video is inconclusive. And there is a lot of law on videos, especially including in the Sixth Circuit, I believe the case is Latitz v. Phillips, 898 Fed 3rd, 541, that basically says that uncertainties in a video are to be viewed in the light most favorable to the plaintiff. So I appreciate the court's indulgence and its time. I had some more points. Chief Judge Sutton, may I ask one more question? Yes, go ahead. Mr. Freeman, I reviewed the video frame by frame several times, and it appears to me that the car does move. You can see a tree in front of the car, and the car moves past the tree slightly. And then you see the officer's gun recoil, and the recoiling of the gun happens after the frame that the car moves. Am I wrong in viewing that the way I am? Your Honor, I'm not going to suggest to you, Judge Griffin, that you are wrong. What I will say is this. The district court made the findings of fact. Those findings of fact were made and are of record, and this court should not re-review those findings on appeal. Don't we review finds of fact for clear error? For clear error? Yes, clearly. If clearly erroneous, however, under Johnson v. Jones, the function of this court on appeal and an interlocutory appeal is not to re-review issues of fact, and that's pretty clear. In fact, just like with the original standard for summary judgment, all the facts are to be taken from the plaintiff's perspective as true. So, again, I understand what you're saying, and I don't know whether I agree with you because I've reviewed the video too, but that's up for the fact finder. Do you dispute my review of the video? I would never dispute it. I would never dispute it. Frame by frame, you say what I see is not what you see, I guess. Is that it? Judge, what I'm saying is that the decision must be made by a fact finder consistent with all of the other inconsistencies and the other evidence of bad faith and the other evidence we have in the record. I will say this. Under no circumstances would I dispute your personal conclusion. That is not something I'm in a position to do. Okay, thank you. Okay, I think we'll hear rebuttal. Thank you so much. Thank you. Appreciate it, Mr. Friedman. Ms. Walker. Your Honors, the burden of proof is on the plaintiff to establish by direct or circumstantial evidence that Brian Arnold acted with bad faith, that he acted with malice and with a corrupt motive, that he was not honest in his belief and his purpose, that he believed that he was in fear of his life or that he was in fear of the life of Officer King. What we've discussed on direct and on their response is this video and it being too close to call. I agree with Judge Griffin on this frame by frame. I think it's very clear and that you can see the vehicle move first. All of this to say, if there's an argument about whether or not it's too close to call or the vehicle moved first or it didn't, we certainly cannot sit here today in hindsight in 2020 at leisure, not with an assailant in front of us, not in the situation that Brian Arnold was in and say his decision in this too close of a call realm at worst was in bad faith. And I think that's what we have to make sure that we keep our focus on. The perception that's important is the perception as an officer at the scene, the rapidly unfolding events, the one who has to make the decision, who has to make the discretionary decision whether or not to shoot. And we've talked a lot about, you know, is this an honest belief? What did Arnold say? Well, I disagree with some of the representations of what the testimony was from Arnold. You have that in your briefing. I don't have time to go through all of it now. I will say he never said I made a decision to shoot before that car moved. He said he was legally justified, which the law does under Boyd v. Bepler, say you do not have to wait until the threat materializes, and he was justified, but he did wait. I'm sorry about immunity.  Is there a clearly established analog under Kentucky law too? Is it required that it be clearly established like it does under federal law? It's not laid out like that. It's not a constitutional right that's laid out the way it is in federal courts. I would say that's captured in the good faith analysis. If it's not clearly established, then it wouldn't be in bad faith. It would be more to that analysis for the court, but it doesn't have the factors per se that the federal court does. I would like to read the court, if you'll indulge me, one quote from Arnold, because I do think it sums up where he was, and, again, we have to remember that it's his perception. When he was asked why the other officers didn't shoot, and, of course, we have different perspectives of people on the scene, he said, they didn't see what I saw. I felt like I was going to die. I thought she was going to die. I thought I was justified before he ever stepped on the gas when he started reaching for his gun. I thought he was going to kill me, and I didn't think I was going to get to go home to my children. So I can't answer what the other detective saw. I can only answer to what I saw, and what I saw was that I was going to get killed, and it's a heavy burden to carry that you've killed someone. So when I say that you were laughing at me earlier, I take this wholeheartedly serious. I carry this with me every day. Arnold will carry this burden for the rest of his life, but he showed her the burdens of litigation for far too long. The Kentucky Supreme Court is clear. It's for the trial court. It's for the appellate court. It's for the Supreme Court, if no one else looks at it, to look at qualified immunity. Your time is up. I'm sorry. Thank you. Thank you. Thanks to both of you. We appreciate your helpful arguments and briefs. The case will be submitted.